FBCPLAMA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          15 CR 734 (WHP)

RAYMOND LAMBIS,

           Defendant.

------------------------------x

                                  New York, N.Y.
                                  November 12, 2015
                                  2:42 p.m.

Before:

              HON. WILLIAM H. PAULEY III,

                                  District Judge

                     APPEARANCES

JAMES M. McDONALD
    United States Department of Justice

B. ALAN SEIDLER
    Attorney for Defendant

1              (In open court)

2              THE COURT:  Good afternoon.  Please be seated.

3              (Case called).

4              MR. McDONALD:  Good afternoon, your Honor.  James

5     McDonald for the government.

6              THE COURT:  Good afternoon, Mr. McDonald.

7              MR. SEIDLER:  Good afternoon.  Alan Seidler for

8     Mr. Lambis, your Honor.

9              THE COURT:  Good afternoon, Mr. Seidler.  I note the

10    presence of the defendant, Mr. Lambis, at counsel table.

11             Briefly, Mr. McDonald, what are the nature of the

12    charges against the defendant, and what discovery does the

13    government have to provide to his counsel?

14             MR. McDONALD:  Yes, your Honor.  The defendant has

15    been charged with a narcotics conspiracy in violation of 21,

16    United States Code, Section 846, based on a (e)(1)(A) quantity

17    of heroin.

18             The discovery that I've just handed over to

19    Mr. Seidler includes the charging documents in this case,

20    various DEA reports, which include a list of the items that

21    were seized from Mr. Lambis' apartment.  It lists the items

22    such as digital scales, empty Ziploc bags, X-Acto knives and a

23    quantity of narcotics, which was just under one kilogram of

24    heroin.

25             It includes a summary of the defendant's post-arrest

statements that were made, and it includes the paperwork that was associated with the GPS tracking order that was obtained from this district on the defendant's phone, which led to the search of his apartment, which led to the recovery of the items, that led to the arrest and the charges in this case.

There's one outstanding piece of discovery, Rule 16 discovery that I've not produced to Mr. Seidler yet, which is a videotaped -- the post-arrest interview was videotaped. I have notes of that. I don't have the videotape yet. I'm told from the DEA agents that I'll have that Monday, and as soon as I have that, I'll hand it over to Mr. Seidler.

THE COURT: All right. Does the government anticipate any superseders here?

MR. McDONALD: Right now, your Honor, the government does not anticipate any superseders. This is a standalone case at this point. I will say, and this is part of the GPS tracking paperwork that I've handed over to Mr. Seidler, the defendant's phone number was passed over a VBM wire that relates to a broader investigation that the office is conducting.

The defendant did not, himself -- that phone number, it did not itself make any statements that were captured on the wire, but it was the passing of that number that led to the GPS tracking order on his phone. We don't believe that that is rule 16 discovery because there are no defendant statements on

1    that wire, and we don't intend to rely on it in this case.

2            But because it's part of the discovery that I've

3    produced -- there are references to it and the relevant

4    statements have been produced in the discovery.  I just wanted

5    to let the Court know of its existence.  I don't expect that

6    that would lead to any superseders in this case, though.

7            THE COURT:  All right.  Thank you, Mr. McDonald.

8            Mr. Seidler, assuming that the government produces the

9    video to you early next week, how much time would you like to

10   review the discovery that Mr. McDonald's provided today, as

11   well as the video, in order to determine what motions to make?

12           MR. SEIDLER:  Does your Honor have any time on

13   December 14th or 17th that we can come back?  Or the following

14   week.

15           THE COURT:  I do.  But what about December 11th?

16           MR. SEIDLER:  That's fine, too.

17           THE COURT:  All right.  December 11th at 4:00.

18           MR. SEIDLER:  Fine.

19           THE COURT:  At that time, I'll expect, Mr. Seidler,

20   that you'll be in a position to tell me what motions, if any,

21   you want to make, and I will fix a motion schedule and a trial

22   date.

23           MR. SEIDLER:  Okay.

24           THE COURT:  Mr. Seidler, what is the defendant's view

25   concerning the exclusion of time?  Actually, before I get to

FBCPLAMA

1  that, I think perhaps I better arraign the defendant.
2              MR. SEIDLER:  Yes, your Honor.
3              THE COURT:  All right.  Before we get too far ahead.
4              So, Mr. Lambis, would you stand.  Are you the
5  defendant, Raymond Lambis?
6              THE DEFENDANT:  Yes, sir.
7              THE COURT:  And have you seen a copy of the indictment
8  in this case?
9              THE DEFENDANT:  Yes, sir.
10             THE COURT:  And have you discussed it with your
11 attorney?
12             THE DEFENDANT:  More or less, yes, sir.
13             THE COURT:  And do you waive my reading the indictment
14 word for word here in open court?
15             THE DEFENDANT:  Yes.
16             THE COURT:  And how do you plead to the charges by the
17 United States against you in this the indictment?
18             THE DEFENDANT:  Not guilty.
19             THE COURT:  Guilty or not guilty?
20             THE DEFENDANT:  Not guilty.
21             THE COURT:  All right, sir.  You can be seated.
22             Now, I understand that the magistrate judge fixed a
23 bail package here at an earlier appearance?
24             MR. McDONALD:  That's correct, your Honor.  The
25 government is fine with continuing those conditions today, and

FBCPLAMA

1  just if the Court would like, I can recite those conditions.

2  THE COURT:  Why don't you.

3  MR. McDONALD:  $75,000 personal recognizance bond,
4  cosigned by two financially responsible people; travel
5  restricted to the Southern District of New York and Eastern
6  District of New York; surrender all travel documentation and no
7  new applications; strict pretrial supervision; drug testing and
8  treatment; and the defendant was released on those conditions.

9  My understanding is that the defendant has between the
10  presentment, which was August 28th, and today has complied with
11  those conditions and there have been no issues.

12  THE COURT:  Very well.  Thank you, Mr. McDonald.

13  Mr. Lambis, do you understand that you're going to
14  continue to be released under those bail conditions that were
15  previously set and that Mr. McDonald has just recited on the
16  record?

17  THE DEFENDANT:  Yes, sir.

18  THE COURT:  Good.  Then I expect you to continue to
19  fully adhere to all of them, sir.

20  THE DEFENDANT:  No problem.  Yes, sir.

21  THE COURT:  You may be seated.  Are there any other
22  matters that counsel wish to raise?

23  MR. SEIDLER:  No, sir.

24  THE COURT:  What about the exclusion of time?

25  MR. SEIDLER:  We consent to that, your Honor.

FBCPLAMA

1  THE COURT: All right. Since this continuance is due
2  to the government's need to complete its production of
3  discovery and the defendant's need to review that discovery in
4  order to determine what motions, if any, to make, I prospective
5  will exclude the time from today until December 11th, 2015,
6  from Speedy Trial Act calculations.
7  I find that this continuance serves to ensure the
8  effective assistance of counsel and prevents any miscarriage of
9  justice. Additionally, I find that the ends of justice served
10 by such a continuance outweigh the best interests of the public
11 and of the defendant, Mr. Lambis, in a speedy trial pursuant to
12 18, U.S.C., section 3161.
13 Any other matters that counsel wish to raise?
14 MR. McDONALD: Nothing from the government, your
15 Honor.
16 MR. SEIDLER: No, sir.
17 THE COURT: Thank you very much for coming in. Have a
18 good afternoon. I'll see you on December 11th.
19 MR. McDONALD: Thank you, your Honor.
20 (Adjourned)